Having moved Acticon up to number one, we will now resume the regular calendar and we'll call Hastings Development v. Evanston Insurance Company. Mr. Subin, good morning. May it please the court. My name is Eric Subin. I'm an attorney with Traub, Lieberman, Strauss, and Shrewsbury and I represent defendant appellant cross appellee Evanston Insurance Company in this case. The primary issue on Evanston's appeal in this case is whether the district court erred in ruling that an employer's liability exclusion in a general liability policy which excludes coverage for bodily injury to an employee of any named insured is ambiguous as a matter of New York law. And my argument on behalf of Evanston on that issue is really very simple. There is no case law support or other support in New York law for a reading of an exclusion for bodily injury to an employee of any named insured as ambiguous. Where do you see any named insured? I see the named insured. All right. Now, now. So you're not relying on the actual language to start with? I disagree with that. Now, you're going to tell me something other than what this particular provision says. No, Your Honor. I'm going to direct you to another portion of the endorsement in which this provision appears. Okay. So you're going to direct me to another provision. I mean, let's be very clear. What the actual language says, is it not, is that the insurance does not apply to any claim, suit, et cetera, arising out of bodily injury to an employee of the named insured. That's what it says, right? It does say that. Okay. So now you're going to tell me about substituting the definition? I don't think it's substituting. I believe that it's amplifying or explaining the meaning of the word employee in that phrase. I want also to observe that Judge Statt below also read this definition to mean an employee of any named insured, and that when inserted into this subparagraph one of the endorsement, that's the proper reading. Well, when it's substituted into the provision that I just read, it would read an employee of any named insured of the named insured. Isn't that what happens if you substitute the definitional provision into the actual text? Well, I would suggest a reading of an employee of the named insured, also any named insured, also an employee of any named insured. Well, you might suggest that, but that's not what the language actually says, is it? If you have a term and then you have a definition of the term, typically you move that definition into to replace the word that it defines, right? So what Your Honor is saying is an employee of, just so I understand what Your Honor is saying. Well, if you're saying the word employee means a member, associate, leased worker, temporary worker, et cetera, of any named insured, then you would substitute that language for employee, wouldn't you? An employee of any named insured. But then you still have of the named insured following. What sense does that make? Well, I believe it does make sense, and I believe that there are similarly worded exclusions in policies that have been considered in New York cases, New York insurance cases, where the exclusionary language will say an employee of the named insured and any insured. I've seen policies like that. That's the language that says that, but this is language that does not say that. It conspicuously does not say what the provisions in those other cases say. Well, I believe it's the functional equivalent, otherwise what's the meaning of the definition? When you look at it, what it says is whenever the word employee appears, it shall also mean a member, associate, leased worker, temporary worker of or persons loaned to. So it seems to supplement the idea of employee with people who aren't employees. But our person is, in fact, an employee of another named insured, right? He's not. I don't know exactly what these things all mean, a member, associate, leased worker, but these are all things that define people who are not employees as employees. If I may, with respect, Your Honor, I believe that that reading reads the word employee out of the definition. An employee obviously must also mean an employee. But the employee in the provision refers to an employee of the named insured. The problem you've got, isn't it, is that you have to show that your reading is unambiguous, right? Well, I believe it is unambiguous, and I believe that where the district court erred was in leaping to the doctrine of ambiguities without reading New York case law that construes the phrase employee of any named insured. Those cases all hold that such an exclusion is unambiguous and applies as a matter of law. Yes, if it said in subparagraph one there, an employee of any named insured, you'd be exactly right. It would be unambiguous, and we wouldn't even be here, and you wouldn't even have to resort to the additional definition. But the problem is it doesn't say that. So now we've got a problem with defining what the named insured in a clause that also refers to any insured and also in another place uses the language any named insured. I mean, you would agree that it's sort of an odd thing. If you mean to say it shall apply, it shall exclude any suit out of bodily injury to an employee of any named insured, it's sort of an odd way. If you wanted to say of any named insured, it would be sort of odd to say the named insured and then have another provision that seems to exist for a rather different purpose as the way that you get any named insured into language that could just as easily have said an employee of any named insured the way the ones in the cases do. Well, again, I respectfully disagree because I believe that all the portions of the endorsement must be read together harmoniously, if they can be read together harmoniously, and I believe they can in the reading that I'm suggesting. I would also like to direct the court's attention to the Nautilus case, which was cited in the briefs and discussed in the briefs, which I believe is factually the most similar case to this one in that the case involved an expanded definition of employee. And the court there held, here it is, it's Nautilus Insurance Company versus Barfield Realty Corp. It's an unpublished decision. I have a Lexis site, 2012 U.S. District Lexis 148714, where there was an expanded definition of employee, which also suggested or was properly read to mean employee of any named insured. The court held that it was unambiguous when read in tandem, I'm sorry, that the exclusion was unambiguous when read together with this exclusion and that's a district court decision, so it is neither a decision that's binding on us nor is a decision of the New York courts that we need to grant particular respect to under Erie. I understand that, Your Honor, but I do believe that the Nautilus case is consistent with New York jurisprudence construing exclusions for bodily injury to an employee of any named insured as being unambiguous and enforceable against all named insureds. Can I just ask you about the duty to defend the reimbursement of costs aspect of the cross appeal? Yes, sir. Are you claiming you were surprised that Hastings was looking for this relief as well as coverage? No, I wouldn't say that we were surprised, but . . . Were you surprised the district court didn't award it in addition to declaring coverage? I wouldn't say that I was surprised by it. What Judge Spat said in his decision on that issue was that the relief hadn't specifically been requested, that there hadn't been an offer of proof about what those damages were, what those costs were, and as I actually discussed with my learned adversary at the time, even with a declaratory judgment, it's not self-executing. The party seeking a declaratory judgment has to get, in my understanding, an executory order, a judgment, a money judgment, to be able to get that relief. If Judge Spat never instructed Evanston to start defending Hastings, I don't see that there was a predicate for Evanston to do so, having considered the issue. Shouldn't the district court have included a declaration, if we disagree with your primary point, if we agree with Judge Spat, shouldn't he have included a declaration that you had a duty to defend? Wouldn't it follow a fortiori? Well, I don't want to make my adversary's argument for him, Your Honor. Well, you don't have to. I'm asking you the question. Shouldn't he have done it? You can tell me he shouldn't. I'll make your argument. I don't want to be disingenuous. The law in New York is that the duty to defend is broader than the duty to indemnify, and that if there is a potential for duty to indemnify, it follows that there is a duty to defend. I understand one of your points to be something slightly different than that, and let me see if I understand correctly. You're saying that even if we were to direct modification of the declaratory judgment to include a duty to defend, that would still be something different than entering a judgment for damages. Yes and no. Yes, if this Court amends the order to require a defense, I would look at that as a defense going forward. As to what the plaintiff might be owed for past defense costs, that's something they would have to get a judgment for, I believe. Well, they'd have to document whatever those expenses were. But if there were a duty to defend, it would be a duty to defend of an issue, right, not just going forward. If that's what the court orders? Well, if that's what the policy requires. I mean, in other words, if we disagreed with you about your primary argument, and I understand you argue that you have no duty at all in this case, but if we agreed with Judge Spat about the principle holding, I'm just having trouble understanding why there would not also follow that there is a duty to defend. And then, yes, at some later point, if there's going to be a judgment for expenses that they incurred, that would have to be a different matter. Again, Your Honor, I don't mean to be disingenuous. Under New York law, the duty to defend and the duty to indemnify go hand in hand, as I've just explained. Right. So let me just try to come at this one last way, and then we'll let you sit down because you've reserved some time for rebuttal. If we agree that there is a duty to indemnify, then concomitant with that under New York law, certainly the law of Vermont, where I've spent my life practicing, the duty to defend just walks hand in hand with that. Yes. Okay. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Stephen Janis, and I represent Hastings. The language, the named insured, is the only language in there, and as counsel said in his brief numerous times, and Evanston has asserted, that every word has meaning in its exclusion. If we accept the position that any named insured is what was contemplated, despite that it was not stated, it would subsume the the named insured language. It would render it meaningless. It would have no effect in this action, and that certainly is not any justification for an exclusion. I would add that there is a potential explanation, although it was not raised by counsel, of an interpretation, is that merely the employee definition is to show that seasonal type workers would be included in the term employee, perhaps so that they could get workers' compensation, because that is the intent of the policy exclusion. It's if you get workers' compensation because you're the employer, as universal photonics is, then you have coverage under your workers' compensation. You don't need it. Whereas here, Hastings . . . Yes, Your Honor. . . . in the Cohen case, was the issue of whether the workers' comp bar applied also, whether it applies also to Hastings, was that litigated? No, it was not, Your Honor. What happened as to that? Hastings has no employees. Hastings was not the employer. Hastings merely owns a machine. Cohen got workers' comp payments from his employer, one of the other named insureds, right? Yes. And I saw that the underlying lawsuit, Cohen also sued Hastings. Yes, Your Honor. So my guess is Hastings said, well, you can't sue us because of the workers' comp bar. We're a common employer, that kind of argument. Did anybody make . . . I think it was a special defense in that case. Your Honor, it was an affirmative defense in the case. The case is still ongoing. It has not been litigated to finality. That issue is in there. However, the facts that came out have rendered that possibly a moot issue because it's been determined that Hastings has no employees, has no office. It owns the machine. It provides the machine with full rights and obligations to maintain it with Universal Photonics. Universal Photonics employees used it, operated it. In fact, the Cohen plaintiff was the person responsible for maintaining it and so forth. So we don't necessarily see that there is a viable argument, but it is raised as an affirmative defense in the underlying action. What do you make of the additional definition that Mr. Subin referred to? Because it does say that whenever we use the word employee, it also means pretty much anybody associated with any named insured. Why isn't he right about what that means? Well, I think as Your Honor pointed out, it would require a reading that it would be an employee of any named insured and the named insured, which would render the named insured meaningless. And that's the specific language chosen by Evanston, the named insured. They could have simply said any named insured and we would not be here today. Well, I understand that, but I mean, you know, when you say it would make that language meaningless, I suppose it's not unprecedented that a contract uses a word that might seem to mean one thing and then later it's defined to mean something much broader. And that doesn't strike me as alien to my experience of reading contracts. Well, Your Honor, I believe that that brings us to Nautilus, which was pointed out by counsel. I don't think that this is that circumstance. I think Nautilus could be that circumstance. Nautilus, we agree, specifically says that when you use the word the insured as opposed to any insured, there's a distinct difference there. And so to put both of them in the same clause is on its face ambiguous. But Nautilus had a very broad employee definition, which went well beyond what is included in our case here. It included contractors, subcontractors, employees of contractors hired by any named insured. So in that case, Barfield was the owner of the premises who retained a contractor. The contractor's employee was injured. And although it said the named insured in the exclusion, if you replace employee with an employee of a contractor hired by any named insured, it fits right in. So that's the circumstance where perhaps it could apply. That is not this case. I don't know why it would make a difference necessarily, but that in effect is substituting any insured for the named insured, including unnamed insureds, right, as often comes up with contractors and subcontractors. Under those circumstances, it would do that because also it was the insured, not the named insured, which this Court has noted the difference. Wouldn't that have solved the problem, too, if it were the named insureds rather than the named insured? Wouldn't that have solved the problem, too? I believe it would still be an ambiguity, Your Honor, but I think it would be closer. Admittedly, the named insured means more than one, whereas this clearly contemplates one person, one entity. This is a separation of insureds clause, which has to be considered here. The separation of insureds clause says that each insured is treated as if it's the only insured. So when you have the named insured and a separation of insureds clause to go with it, there are no other insureds. That creates even a greater ambiguity with the attempt, by instance, to say this clause applies to the named insured and any named insured. Can I ask you about bad faith, too, and that is your claim for bad faith? Yes, Your Honor. We're still trying to figure out what the insurance policy means. How is there a viable claim for bad faith? Do you have any other basis other than they denied coverage and it wouldn't pay the cost of defense in the Cohen action? Is there any other evidence that you have that they did something wrong that shows bad faith? Well, Your Honor, this was at the pleading stage, so we believe that evidence would have been brought forth. We believe the fact that, taken in the totality of the circumstances, they didn't reserve their rights and assume the defense. They required their insured that they wrote a policy naming them as an insured. They required them to go out and defend themselves in the underlying action, which is still pending. At the same time, they made an argument that we think on its face is totally ambiguous to say that the named insured and any named insured are the same. We don't think there was a fair enough basis for them to assert absolutely that Hastings is not entitled to a defense. You've got four judges wrestling with that issue, right? We understand, Your Honor. One with one of them. We understand, Your Honor. And had this gotten to the point of a summary judgment motion, we understand that it would be held to our proof. But this was the initial pleading. We didn't get a chance to go beyond that. As a matter of law, is it your contention that if we find that there is, how to put it, clearly ambiguity in this, that would put them into bad faith? In other words, that in deciding how obvious it is that there should be coverage, we should also find it obvious that there's coverage when it's not obvious, but it is ambiguous and contrapreferendum applies? Your Honor, I think if you take a case that the ambiguity is clear, it's in an exclusion, and the insurance company chose not to defend under a reservation of rights, they just outright denied coverage, I think that certainly passes the pleading stage. Whether the intent and so forth can be proven at trial or in a motion for summary judgment is a different issue, but I think it passes the pleading stage. Your Honor, the other issue on the defense, I don't want to go too far into it, but Judge Spatt made it very clear what his intent was, in addition to what we all know to be the duty of defense being broader and included in the indemnity. He specifically stated in his order that we were entitled to the employee's liability exclusion does not bar coverage to the plaintiff for damages and costs associated with the co-inaction, and then he specifically said there's no other basis for denying coverage to Hastings for damages, legal costs, and medical expenses resulting from the co-inaction. So his order clearly contemplated defense and reimbursement of defense costs, but for some reason he limited his judgment to indemnification, and that's been held onto by Evanston to continue to deny defense. So with that, Your Honor. What is it exactly that you would be asking us to direct? If we were to agree with your principal argument that there is a duty to indemnify and further conclude, as Mr. Sabin acknowledges, that the duty to defend goes hand in hand, what should the judgment say? I think it should say pretty much what was just dated by Judge Spatt. What you just read from the opinion. Exactly, Your Honor. That they would have a duty to defend and a duty to pay the damages for the previous defense costs. Reimbursement of all defense costs. And that would be a declaration, and to the extent that you wanted to reduce that to a money judgment, some further action or some further activity in this case is what you'd need to do? Yes, I would assume that I could sit down with counsel, we can work out what would be the reasonable cost and resolve it. If not, it would require an additional action or reopening of the case, I would assume. But at this point, we can't get there because counsel is taking the position that it wasn't included. But you would file a motion for summary judgment on this, right? It wasn't a motion to dismiss in the declaratory judgment aspect. Didn't you have an obligation then if you're filing a motion for summary judgment to produce how much the defense costs were, to provide evidence of that? Well, Your Honor, the defense costs are dynamic. They're constantly moving and increasing because the case has been litigated all throughout this appeal and throughout the case below. So there are things going on. The motion is pending in that action right now, and there may be a trial coming up this summer in that case. So it keeps going. And I did, in fact, produce a letter to counsel advising what the costs were immediately after Judge Spatz's order came down, and we couldn't agree. Before Judge Spatz, did you say, we also are seeking, obviously, defense costs. Here is what we've got so far, or we'd like the further opportunity of the motions granted to supplement it with actual costs in the past and future costs, anything like that? So he was aware of it? Your Honor, you mean to Judge Spatz or to . . . Yeah, Spatz. I submitted several letters pointing out how much. I didn't give the exact numbers to Judge Spatz. I just simply said that we were entitled to reimbursement. We were hoping to get defense going forward and then reimbursement of what's been paid to date, and Judge Spatz did not amend the judgment. What you're actually asking for here, and I take it from the beginning of the lawsuit, is just a declaration that they are obliged to indemnify you, that the exclusion does not apply, that they're obliged to indemnify you and they're also obliged to defend you. And . . . They reimburse us. I take it. Well, okay. But I mean, I'm not sure that would . . . Why wouldn't that be enough? If it just says they're supposed to defend you and they haven't done it, then the next action is some action for damages for that breach. I agree. I agree. Your Honor, I would like to reserve for a potential rebuttal if necessary. We don't have, sir, rebuttals. Okay. Anything else you'd like us to hear in your remaining 15 seconds? And I think that's it, Your Honor. Thank you. Thank you, Mr. Janus. Mr. Subin. Yes, Your Honor. I just want to respond to a few points that Mr. Janus made. One is to address the point about the named insured and any named insured or any insured. These . . . As I said earlier, there are published cases in New York where these two phrases appear together in employer's liability exclusion. I understand that that's not this case, but there are cases where they do appear together. My office actually argued another case before this court recently where Judge Spad, also the judge below, had read those two phrases to mean something different. The named insured and any insured are two different things. One is obviously more expansive than the other, and Judge Spad in that other case actually expressed a doubt as to whether the named insured is subsumed within any insured. I believe he was wrong about that, but they are phrases that have different meaning, and so having them together . . . Have we decided that case that you're talking about? I believe so. It's not my case. One of my partners handled it. Did you reference it? Did not because the briefing had long been done before that case was decided. When you get back to the office, would you send us a 28-J letter, please, just identifying the case you're referring to? Yes, sir. I'll give you a copy to counsel. And my only point in saying this is that I don't believe the existence . . . the coexistence of those two phrases in one endorsement necessarily creates an ambiguity or at all creates an ambiguity. Well, but they clearly don't because they refer to two different things. That's the problem. It says your provision uses the insured for one purpose. I'm sorry. It uses the named insured for an employee of the named insured arising in the course of employment by any insured. So they clearly mean two different things in the two provisions. And the second one is broader. Any insured and any named insured are broader than the named insured. I agree with that. And any insured is broader than any named insured because any insured would also include subcontractors and so on who would otherwise get derivative coverage in the policy. I agree. That's what the case law says. If I may just touch on a couple of other points very quickly. One is that Your Honor, in questioning Mr. Janus, asked a question that had slipped my mind, which is that the scope of the duty to defend obviously is the four corners of the complaint under New York law. And Hastings was alleged to be the employer in that or an employer in that pleading. And the determination of a duty to defend in the first instance is just by comparing the provisions of the policy to the pleading that's presented. So here making that determination that there was no duty to defend in the first instance I believe is correct based on the allegations, even the alternative pleading that both Universal Photonics and Hastings were employers of the plaintiff. Is that the ruling that Judge Spat made? No. Actually, this issue never came up in the motion practice. Was it argued to him and he just didn't decide it? No, it was not argued. With respect to separation of insurers, I also just wanted to... Maybe I'm missing your point. You're just saying in the Cohen suit because they also alleged that Hastings was the employer and thus would have the benefit of the workers' compensation bar. So in other words, Cohen just looks to workers' compensation against both Photronics and Hastings. That triggered a duty not to defend? Is that what your argument is? The flip side of a duty to defend is when you look at the underlying lawsuit. I mean the typical one is if the allegations in the underlying lawsuit, even if not true, trigger the policy coverage, you've got a duty to defend. That's kind of the basic law of I think all three states represented here. But are you saying that if the underlying policy, underlying complaint says he was an employee also of Hastings, that means the insurance company doesn't have a duty to defend? Is that what you just said? I would say that that's correct, yes. That the insurance company doesn't have a duty to defend. I wouldn't call it a duty not to defend. I believe that the contractual obligation isn't triggered in the first instance. But that's not an argument that you made below you. No. No, Your Honor. If I may, I realize that I'm out of time. Just say one other thing about the bad faith issue, which is that as I believe Your Honors are aware, New York law does not recognize a separate bad faith claim or cause of action for insurer of bad faith where the issue is an incorrect coverage determination. Without admitting or conceding in any way that Evanston's coverage determination in this instance was incorrect, even if it were, there would be no bad faith under New York law. New York law has a presumption against bad faith, and the bad faith claim is considered duplicative of the breach of contract claim. So in the event that the court decides to affirm Judge Spatz' ruling, there would at most be a breach of contract and no predicate for bad faith damages under New York law, absent a separate tort duty or tort liability which has not been alleged and has not been established. Just remind me, did Judge Spatz decide that issue? Yes. All right. Thank you. Thank you, Your Honor. Thank you, Mr. Subin. Thank you both. We'll reserve decision.